FILED

Clerk's Office
United States District Court for the District of Southern California

2011 JUN 15 AM 10: 51

CLERK US DISTRICT COURT
SOUTHERN DIST...

NUNC PRO TUNC

RE: Liberty Media Holdings v. Swarm of 11/16/2010 and Does 1-95
Southern District of CA Docket # 11-cv-619 (BTM) (BLM)
I.P. Address of the Doe Defendant: 76.116.248.55

JUN 13 2011

Dear Sir/Madam,

I am one of the defendants in the above referenced matter. My IP address is 76.116.248.55. Enclosed please find a motion to dismiss and in the alternative, issue a protective order and a motion to proceed anonymously.

Please direct any correspondence to:

c/o:
Jennifer S. Coatsworth, Esq.
MARGOLIS EDELSTEIN
The Curtis Center, Ste. 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337

Sincerely,

J Doe

Doe Defendant
IP address 76.116.248.55

## MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO ISSUE A PROTECIVE ORDER AND MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

### INTRODUCTION

Defendant Doe[2] (hereinafter "Doe") makes this limited appearance before this Court for the sole purpose of respectfully requesting that the Court dismiss Doe from this litigation, or in the alternative, grant a protective order preventing disclosure of the materials requested by subpoena issued to the Internet Service Provider ("ISP").

Doe recently received notice from the ISP that it had been served with a subpoena by Plaintiff in connection with the instant case (the "Litigation"). The Subpoena was issued by another Court in a different District. At the same time, Doe was informed for the first time that, as the owner of a given IP address, he is currently identified as a putative defendant in the Litigation. Doe understands that the purpose of the subpoena is to require the ISP to provide Plaintiff with Doe's name and contact information, so that Plaintiff will then be able to substitute Doe's true name in the Litigation. Doe is now moving for leave to proceed anonymously, to dismiss the allegations against him, and to issue a protective order. Doe is also moving to quash the subpoena in the court that issued the Subpoena. A brief overview of the deficiencies in the Litigation illustrates that the Litigation violates fundamental principles of federal jurisdiction and civil procedure.

In the Litigation, Plaintiff filed a single complaint against 95 defendants, identified simply as Does 1-95. The Complaint alleges that each defendant committed a similar legal violation of copyright infringement by downloading a movie from the Internet; however, the Complaint admits that the Defendants engaged in this conduct separately, independently, at different times, and in different locations. The Defendants are identified only by the IP addresses associated with the computers which allegedly downloaded the information. The Complaint alleges that the owners of the accounts associated with those IP addresses committed the copyright infringement – even though Plaintiffs have no basis for asserting whether the owner or some other authorized or unauthorized user of the computer or computer network committed the violation. Based on this critical – and baseless – assumption, Plaintiffs next sought to learn the identities of the owners of the IP addresses by requesting the Court to issue subpoenas to internet service providers requiring those ISPs to provide the names of the owners of those IP addresses.

---

[2] Defendant has not received any copies of the papers filed in the underlying litigation and therefore does not know which number "Doe" he is in that litigation. These documents will refer to the undersigned Defendant as Doe.

As the arguments set forth herein demonstrate, the instant case is a predatory mass litigation in which Plaintiff has taken unconstitutional shortcuts in violation of the most fundamental principles of the federal courts' procedural safeguards. Accordingly, Doe respectfully requests that the Court dismiss Doe from the Litigation, or at the very least, issue a protective order preventing disclosure of information about Doe requested in the subpoena.

## I. The Court Should Allow John Doe to Proceed Anonymously

As an initial matter, Doe respectfully requests that he be permitted to proceed anonymously in filing this motion. The only way for defendant John Doe to protect his rights by way of these motions without identifying himself by name is to proceed anonymously. See 2TheMart.com, 140 F.Supp.2d at 1095-98; Best Western Int'l Inc. v. Doe, No. CV-06-1537, 2006 WL 2091695 at *5 (D. Ariz. July 25, 2006). Proceeding anonymously is the only method of not rendering moot these proceedings by disclosing the very same information which Plaintiff seeks to obtain through its improper subpoena. In other words, quashing the subpoena while requiring defendant John Doe to proceed in his own name would entirely defeat the purpose of the motion to quash. Accordingly, Doe respectfully requests that the Court permit him to proceed anonymously.

## II. The Complaint Should be Dismissed because the Court Does Not Have Personal Jurisdiction over the Defendant

This Court cannot consider this case unless it has personal jurisdiction over Defendant Doe, and the Plaintiff has failed to meet its burden of establishing that such jurisdiction exists. Generally, the law recognizes that a plaintiff can sue a defendant only in a jurisdiction with which the defendant has a connection, and the plaintiff bears the burden of proving that a constitutionally-sufficient connection exists. This requirement "gives [ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Plaintiff has not met this burden in its Complaint. The complaint asserts a single piece of identifying information about Doe: his IP address. Nonetheless, upon minimal investigation, this single piece of information is sufficient to establish that personal jurisdiction over Doe does not exist in this state. Armed with an IP address, identifying the home state of Doe is very easy. There are numerous publically available websites where any member of the public, including Plaintiff, can conduct a search based on an IP address and produce results identifying the general location of the user, including city and state. For example, a quick search of Doe's IP address on www.ip2location.com reveals that the IP address associated with Doe's computer is physically located in Pennsylvania. Thus, Doe's IP address – the only identifying feature of Doe asserted in the Complaint – establishes that Doe does not reside in this District.

Moreover, Plaintiff fails to identify any other purported contacts that Doe may have with this District, let alone contacts sufficient to satisfy the constitutional minimum contacts threshold. Importantly, there is no such thing as generalized Internet jurisdiction. Plaintiff appears to suggest that Internet users may be haled into court anywhere their ISP has other customers, and thus (arguably), has significant contacts. This approach runs directly counter to well-settled constitutional principles and prevailing case law. In <u>GTE New Media Services Inc. v. BellSouth Corp.</u>, the Court of Appeals for the D.C. Circuit rejected just such an expansive theory of jurisdiction. 199 F.3d 1343 (D.C. Cir. 2000). In that case, plaintiffs asserted that the court had jurisdiction over foreign commercial defendants for the additional reason that they had "entered into an agreement outside of the District with an eye toward attracting Internet users in the District to their websites . . . and thereby draw advertisers away from [plaintiff]." <u>Id.</u> at 1349. The court observed that there was no evidence of financial harm to the plaintiff in the District and squarely rejected the notion that the ability of a D.C. resident to access and use a website was sufficient to establish personal jurisdiction over the operator of the website. <u>Id.</u>

Thus, the fact that the ISP provider supplies service to other people in this District or is otherwise subject to jurisdiction here due to its own minimum contacts does not change the analysis with regard to the actual defendants in this lawsuit. Merely contracting with an ISP (or any other corporation) that happens to have other business in this District does not signify any intent of the customer to interact commercially with anyone in this District. The ISP provider operates offices across the nation; the fact that it provides service in this District cannot be the basis for suing its foreign customers here.

Generally, a defendant can be haled into court in a jurisdiction if that defendant has some sort of connection with the jurisdiction. For example, the D.C. Circuit has found jurisdiction where, unlike here, commercial defendants served customers within the district. In <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 511-13 (D.C. Cir. 2002), the court had jurisdiction over defendant brokerage firm where D.C. residents could open brokerage accounts online and use them to buy and sell securities, transmit funds, borrow and pay commissions and interest. Thus, the court noted, "[a]s a result of their electronic interactions, Ameritrade and its District of Columbia customers enter into binding contracts, the customers become owners of valuable securities, and Ameritrade obtains valuable revenue." <u>Id.</u> at 512-13. In line with this precedent, in <u>Arista Records Inc. v. Sakfield Holding Co. S.L.</u>, 314 F. Supp. 2d 27, 31 (D.D.C. 2004), the court held that the evidence that a District of Columbia resident had subscribed to and used a music-downloading website, which required filling out personal information, agreeing to a license agreement, and downloading and installing proprietary software, was sufficient to establish personal jurisdiction over a nonresident website operator in a copyright infringement action brought by record companies. Unlike these cases, however, in this case defendant Doe is a private individual who has not engaged in any conduct whatsoever directed toward this forum.

Furthermore, the fact that a private individual uploads movies or statements on a file-sharing website which may then be downloaded in the District was insufficient to confer personal jurisdiction. GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).

These decisions are consistent with the general "sliding scale" rules established by courts for determining the proper jurisdiction for suits arising out of Internet activities. Under these "sliding scale" principles, defendants who passively post information on the Internet for others to examine and copy are not subject to personal jurisdiction based on their Internet postings. ALS Scan, Inc. v. Digital Serv. Consultants, 293 F.3d 707, 714-15 (4th Cir. 2002). Further down the scale, defendants whose Internet sites are commercially "interactive," meaning that they design and utilize their websites for the purpose of engaging in business transactions, are subject to being sued in any state in which a substantial number of business transactions occur. Id. In general, the greater the degree of commercial interactivity along this continuum, the greater a defendant's liability for suit in a foreign jurisdiction. Id. Thus, the Fourth Circuit found that there was no personal jurisdiction over a nonresident ISP in a copyright infringement action brought by the owner of photographs against the ISP and its customer who had allegedly published the copyright-protected photographs because the ISP's activities of providing bandwidth to the customer and publishing the ISP's own website were merely passive; thus, the ISP did not direct its electronic activity specifically at any target in the district and did not manifest an intent to engage in a business or some other interaction in district. Id. See also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (maintenance of Internet website accessible to Texas consumers did not support exercise of personal jurisdiction over that defendant); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (no jurisdiction over a Florida corporation which had directed "no commercial activity over the Internet in Arizona. . . . [but only] post[ed] an essentially passive home page on the web"). Cf. Neogen Corp. v. Neo Gen Screening, 282 F.3d 883, 888-89 (6th Cir. 2002) (finding personal jurisdiction where, in addition to other contacts, defendant not only maintained website but provided customers in the district with passwords so they could access confidential test results via that website).

The allegations against Doe in this case do not include claims of commercial interaction with anyone in this District. Instead, Plaintiff simply alleges that Doe (and the other defendants in this case) used a generally-available software program to upload and download bits of copyrighted material via the Internet, just as any passive website owner or participant in a message board discussion might upload and download to and from the Internet. The mere possibility that someone in this District might access data uploaded from Doe's computer is not a constitutionally sufficient basis for subjecting Doe to suit here, where he has done nothing to direct his conduct to this jurisdiction.

In short, requiring Pennsylvania resident Doe to litigate in this District creates exactly the sort of hardship that the personal jurisdiction requirements exist to prevent. It requires Doe to hire an attorney from this District, where the Doe has no contacts. The cost of hiring an attorney from this District even to defend a defendant's identity (let alone the merits of the case) is likely more than the cost of settlement, and possibly even more than the cost of judgment if Doe was found liable for the alleged violation. Before Plaintiff asks this Court to permit that burden to be imposed upon the Defendant, the Court should direct Plaintiff to establish that this Court has jurisdiction over Doe. It is clear that not only did Plaintiff improperly sue Doe in this District, but also brought suit against hundreds of other defendants in an apparent effort to force all defendants to incur the expense and burden of defending themselves in a foreign District, or forcing them to settle in order to avoid that expense.

Upholding Plaintiff's claims would require proceeding on a theory that the Court may exercise personal jurisdiction over any person across the country, or even the world, so long as the alleged claim involves Internet use. Federal courts have soundly, and quite correctly, rejected this type of approach. Plaintiff's attempt should be rejected here, as well. Therefore, the Court should grant Doe's motion to dismiss for lack of jurisdiction, or in the alternative, require Plaintiff to make an evidentiary showing that personal jurisdiction exists over Doe.

## III. Plaintiff Has Improperly Joined the Defendants Based on Separate and Different Alleged Acts

Plaintiff has improperly joined numerous defendants together in this lawsuit, without sufficient basis. Federal Rule 20 permits joinder of defendants when a two pronged test is met: (1) any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. At most, Plaintiffs here allege a single common question of law in that defendants are alleged to have committed similar copyright violations. However, Plaintiffs have not, and cannot, allege that any right to relief is asserted jointly or severally, or that the violations arise out of the same series of transactions, or that the first prong is satisfied in any manner whatsoever. Accordingly, the allegations in the Complaint are plainly insufficient to satisfy the Rule 20 standard and Doe respectfully urges the Court to sever his claim.

Mass joinder of individuals has been roundly rejected by courts in similar cases. As a court explained in one such case, even the purported factual and legal similarities in such cases are insufficient to satisfy the second prong of the Rule 20 test:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203

> could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Similarly, in LaFace Records, LLC v. Does 1-38, the court ordered severance of a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same alleged violation of the law in exactly the same way. No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008). Despite these similarities, the court found that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." Id. This result is clear based on the two-pronged standard of Rule 20, and applies even more strongly here where the second prong – similar questions of fact and law – is much weaker than in LaFace, and the first prong is similarly unsatisfied.

In fact, the improper joinder is so strong in these cases that one court *sua sponte* severed multiple defendants in an action where the only alleged connection between them was the allegation they used the same ISP to conduct copyright infringement. BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006). See also Interscope Records v. Does 1-25, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate *sua sponte* recommended severance of multiple defendants in action where only connection between them was alleged use of same ISP and P2P network to engage in copyright infringement); BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY), Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004) (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, Twentieth Century Fox Film Corp., et al., v. Does 1-12, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Nor does the allegation of a similar method for committing the alleged illegal activity create a basis for joinder. In Nassau County Association of Insurance. Agents, Inc., v. Aetna Life & Casualty, for example, the Second Circuit refused to allow 164 insurance companies to be joined in a single action simply because they allegedly used the same methods to cheat agents, describing that attempted joinder as "a gross abuse of procedure." 497 F.2d 1151, 1154 (2d Cir. 1974). Here, the second prong cannot be satisfied because whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Thus, Plaintiff's allegations that Defendants committed similar legal violations based on similar downloading conduct is insufficient to satisfy the "common questions of law or fact" standard of Rule 20's second prong. Moreover, it is undisputed that Plaintiff has not alleged and cannot satisfy the joint and several liability or same transaction requirements of Rule 20's first prong. Therefore, joinder is clearly improper in this case and the Court should sever the claims against each defendant. Fed. R. Civ. P. 21. Specifically, the Court should follow the example of courts in similar cases and maintain this action against Doe 1 only and dismiss the claims against all other defendants without prejudice.

## IV. Defendant Doe Moves this Court to Issue a Protective Order

Although courts have not, as a general matter, recognized the right to quash a subpoena (or issue a protective order concerning a subpoena) issued to a different party, courts have found that, in some cases, movants who are not the subpoena recipients have sufficient standing based on "the nature of the information sought." See First Indem. of Am. Ins. Co. v. Shinas, No. 03 Civ. 6634, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). Here, Plaintiff seeks to obtain the name and address of the John Doe defendants. Thus, even though the subpoena is not issued to Doe, the information sought is Doe's personal information, and he clearly has an interest in that information sufficient to confer standing here.

Standing may be found when the movant, though not the subpoena recipient, asserts a "claim of privilege," Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2nd Cir. 1975); "has a sufficient privacy interest in the confidentiality of the records sought," ADL, LLC v. Tirakian, No. CV 2006-5076(SJF)(MDG), 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); or seeks to protect "a proprietary interest in the subpoenaed matter," United States v. Nachamie, 91 F.Supp.2d 552, 558 (S.D.N.Y.2000). See also Ariaz-Zeballos v. Tan, No. 06 Civ. 1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (standing found to quash subpoena issued to non-party banks based on movant's "privacy interest in [his] financial affairs") (citations omitted); Ungar v. Palestinian Auth., 400 F.Supp.2d 541, 553 (S.D.N.Y.2005) (standing to quash subpoena where there was an "excessive number of documents requested, the unlikelihood of obtaining relevant information, and the existence of attorney-client privilege for all documents").

Under Federal Rule of Civil Procedure 26(c), a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Fed.R.Civ.P. 26(c). It is clear that this mass litigation, including the Subpoena, are pursued solely for the purpose of harassing defendants and forcing them to settle in order to avoid the burden and expense of litigating in a foreign court. Even if this Court decides not to dismiss the litigation, or not to rule on that motion at this stage in the proceedings, the Court should issue a protective order in order to protect Doe from having his identity revealed to plaintiffs so that they may pursue their predatory scheme against him.

Respectfully Submitted,

*/s/ J Doe*

John Doe, IP Address 76.116.248.55

Dated: June 9, 2011

## CERTIFICATION OF SERVICE

I hereby certify that one copy of the within motion papers was sent on this date by first class mail to the United States District Court for the Southern District of California:

U.S. District Court
Southern District of California
940 Front Street
San Diego, CA 92101-8900

I further certify that one copy of same was sent by first class mail on this date to:

Marc Randazza
3969 Fourth Ave.
Suite 204
San Diego, CA 92103

John Doe, IP Address 76.116.248.55

By: J Doe

IP Address 76.116.248.55

Dated: June 10, 2011

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SWARM OF NOVEMBER 16, 2010, SHARING HASH FILE A3E6F65F2E3D672400A5908F64ED55B66A0880B8; and DOES 1 through 95,<br><br>Defendants. | Case No. 11cv619-BTM (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR EARLY DISCOVERY**<br><br>[ECF No. 4] |

Plaintiff Liberty Media Holdings is the registered owner of the copyright to a motion picture titled, "Corbin Fisher Amateur College Men Down on the Farm." Compl. Ex. 1. Plaintiff filed a complaint against Doe defendants alleging copyright infringement, contributory copyright infringement, civil conspiracy, and negligence. Compl. ¶¶ 332-80. Plaintiff alleges that Defendants, "whose true identities are currently unknown, acted in a collective and interdependent manner in the unlawful reproduction and distribution of Plaintiff's [copyrighted film] using BitTorrent file transfer protocol." Compl. ¶ 2. BitTorrent, a peer-to-peer file sharing protocol used for distributing and sharing data on the Internet, allows users to join a network "swarm" to download and upload content from each other simultaneously. Compl. ¶ 305. Plaintiff does not know the true names or capacities of the Doe defendants who engaged in the alleged rapid

11cv619-BTM (BLM)

1  viral sharing of Plaintiff's copyrighted film, but Plaintiff does know their respective Internet
2  Protocol ("IP") addresses. Comp. ¶ 11.
3      Three days after filing its Complaint, Plaintiff filed the instant Motion for Early Discovery.
4  ECF No. 4. Plaintiff seeks an Order from this Court allowing it to issue subpoenas to the
5  Defendants' Internet Service Providers (ISPs) requesting the Defendants' personally identifiable
6  information. ECF No. 4-1 at 1. Plaintiff asks that the Order instruct these ISPs and cable
7  operators—specifically Charter Communications, Comcast Cable, Cox Communications, Earthlink,
8  Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation,
9  Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and Windstream
10 Communications—to produce "any and all documents and/or information sufficient to identify the
11 user or users" of the identified IP addresses during the dates and times listed in Exhibit 1 to
12 Plaintiff's Complaint. Id. at 2. In order to determine whether or not the subsequently identified
13 users of these IP addresses actually performed the acts complained of, Plaintiff also requests
14 permission to "propound limited discovery in the form of interrogatories and depositions" on any
15 individual identified by the ISPs. Id. at 1.
16     The Court, having read all papers filed in connection with Plaintiff's Motion for Early
17 Discovery, and having considered the issues raised therein, including the requirements of the
18 Cable Privacy Act, 47 U.S.C. § 551, **GRANTS IN PART and DENIES IN PART** Plaintiff's motion.

## DISCUSSION

**A.   The Cable Privacy Act**

21     The Cable Privacy Act generally prohibits cable operators from disclosing personally
22 identifiable information regarding subscribers without the prior written or electronic consent of
23 the subscriber. 47 U.S.C. § 551(c)(1). However, a cable operator may disclose such information
24 if the disclosure is made pursuant to a court order and the cable operator provides the subscriber
25 with notice of the order. 47 U.S.C. § 551(c)(2)(B). A cable operator is defined as "any person
26 or group of persons (A) who provides cable service over a cable system and directly or through
27 one or more affiliates owns a significant interest in such cable system, or (B) who otherwise
28 controls or is responsible for, through any arrangement, the management and operation of such

a cable system." 47 U.S.C. § 522(5). Accordingly, Plaintiff seeks an Order instructing Charter Communications, Comcast Cable, Cox Communications, Earthlink, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and Windstream Communications to produce documents and information sufficient to identify the users of the specified IP addresses.

**B.    Early Discovery**

A party may not seek discovery from any source before the Rule 26(f) conference unless that party obtains a stipulation or court order to conduct the discovery. Fed. R. Civ. P. 26(d)(1). A court order allowing early discovery may be appropriate "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting and applying the conventional standard of good cause in evaluating a plaintiff's request for expedited discovery).

Although discovery usually takes place only after a defendant has been served, "[s]ervice of process can pose a special dilemma for plaintiffs in cases . . . in which the tortious activity occurred entirely on-line . . . because the defendant may have used a fictitious name and address in the commission of the tortious acts." <u>Columbia Ins. Co. v. Seescandy.com</u>, 185 F.R.D. 573, 577 (N.D. Cal. 1999). Accordingly, courts have, in rare cases, "permitt[ed] limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." <u>Id.</u> (citations omitted).

In determining whether a motion for expedited discovery should be granted to identify anonymous Internet users named as Doe defendants, courts consider whether: (1) the plaintiff can "identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court"; (2) the plaintiff has "identif[ied] all previous steps taken to locate the elusive defendant"; and (3) the "plaintiff's suit against defendant could withstand a motion to dismiss." <u>Id.</u> at 578-80.

**1.    Identification of Defendants**

Plaintiff provides the Court with the unique IP addresses and the dates and times of

Case 3:11-cv-00619-BTM -BLM   Document 5   Filed 04/26/11   Page 4 of 7

connection and the names of the ISPs and/or cable operators that provided Internet access for the users of the identified IP addresses. Compl. ¶¶ 19-304; ECF No. 4 Ex. 1. Plaintiff states that it discovered and documented the alleged infringement of its copyrighted work by the Doe defendants using the specified IP addresses. Compl. ¶¶ 316, 319. The requested discovery will provide the names and addresses of the Internet subscribers who were assigned those IP addresses on the date and time of the alleged infringement. The Court therefore finds that Plaintiff has made a satisfactory showing that there are real persons or entities behind the alleged infringing acts who would be amenable to suit in federal court. See Columbia Ins. Co., 185 F.R.D. at 578-79.

### 2. Previous Steps Taken to Locate Defendants

Plaintiff has identified the Doe defendants' IP addresses and ISPs. ECF No. 4 Ex. 1. Because the transactions at issue occurred entirely online, the IP addresses and ISPs are the defendants' only available identifying information. Without discovery, there are no other measures Plaintiff can take to identify the Doe defendants or obtain their personal information. The Court therefore finds that Plaintiff has made a good faith effort to comply with the requirements of service of process and specifically identify defendants. See Columbia Ins. Co., 185 F.R.D. at 579.

### 3. Whether Complaint Can Withstand a Motion to Dismiss

#### a. Copyright Infringement

"[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a) (2003); Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1073 (9th Cir. 2000)). To prove a claim of direct copyright infringement, "a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act," whereas "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of *another* may be liable as a 'contributory' [copyright] infringer. Id. (alteration in original) (citation omitted). The Ninth Circuit has

1  "interpreted the knowledge requirement for contributory copyright infringement to include both
2  those with *actual knowledge* and those who *have reason to know* of direct infringement." Id.
3  (alteration in original) (citation omitted).
4      Plaintiff alleges that it is the owner, and holds the copyright registration certificate, of a
5  motion picture that Defendants copied and publicly distributed without authorization. Compl. Ex.
6  1, ¶¶ 316-20. Plaintiff also asserts that each of its works is marked with Plaintiff's trademark,
7  a copyright notice, a warning that unauthorized copying is illegal and will be prosecuted, and a
8  required statement regarding age verification records for the individuals appearing in the works.
9  Compl. ¶ 318. Plaintiff alleges that the Defendants "knew of the infringement, were conscious
10 of their own infringement, and . . . were conscious of the fact that multiple other persons
11 derivatively downloaded the file containing Plaintiff's Motion Picture." Compl. ¶¶ 332-49.
12 Accordingly, Plaintiff has alleged the prima facie elements of both direct and contributory
13 copyright infringement and could withstand a motion to dismiss these claims. See Columbia Ins.
14 Co., 185 F.R.D. at 579-80.
15     b.   Civil Conspiracy
16     "Under California law, to state a cause of action for civil conspiracy, *the complaint* must
17 allege (1) the formation and operation of a conspiracy, (2) the wrongful act or acts done
18 pursuant thereto, and (3) the damage resulting from such act or acts." Wasco Prods., Inc. v.
19 Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (alteration in original) (citations and
20 internal quotation marks omitted).
21     Plaintiff alleges that the BitTorrent file transfer protocol is used "almost exclusively to
22 locate, reproduce, and distribute infringing content," and that the Defendants downloaded a
23 special software called a BitTorrent client to traffic in infringing content. Compl. ¶¶ 352-55.
24 Plaintiff further alleges that "[t]he transfer of infringing files cannot occur without the existence
25 and assistance of the participant users," and that Defendants downloaded a BitTorrent client "for
26 the purpose of conspiring with other BitTorrent users to reproduce and distribute movies in
27 violation of copyright laws." Compl. ¶¶ 358-59. Plaintiff alleges that each Defendant "engaged
28 in an unlawful act in furtherance of the conspiracy when he, without authorization, used a

2. Plaintiff may only use the disclosed information for the sole purpose of protecting its rights in pursuing this litigation;

3. Within seven (7) calendar days after service of the subpoenas, Charter Communications, Comcast Cable, Cox Communications, Earthlink, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and Windstream Communications shall notify the subscribers that their identities are sought by Plaintiff. Each subscriber whose identity is sought may, within twenty-one (21) calendar days from the date of such notice, file documents with the Court that contest the subpoena;

4. If Charter Communications, Comcast Cable, Cox Communications, Earthlink, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and/or Windstream Communications wish to move to quash the subpoena issued to them, they shall do so before the return date of the subpoena. If such a motion is brought, Charter Communications, Comcast Cable, Cox Communications, Earthlink, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and/or Windstream Communications shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion; and

5. Plaintiff shall provide a copy of this Order to Charter Communications, Comcast Cable, Cox Communications, Earthlink, Insight Communications Company, Optimum Online, Qwest Communications, RCN Corporation, Time Warner d/b/a Road Runner, Verizon Internet Services, WideOpenWest, and Windstream Communications when the subpoenas are served on each of them.

**IT IS SO ORDERED.**

DATED: April 26, 2011

BARBARA L. MAJOR
United States Magistrate Judge